# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF OKLAHOMA

**FILED**
OCT 28 2025
BONNIE HACKLER
Clerk, U.S. District Court
By_____
Deputy Clerk

| | |
|---|---|
| (1) TYLER ABBEY, as Surviving Next of Kin and Personal Representative of the Estate of DE'JA CURTIS, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> (1) BAPTIST HEALTH SERVICES d/b/a BAPTIST HEALTH WOMEN'S CLINIC - FORT SMITH, a Foreign Corporation; <br><br> (2) BAPTIST HEALTH SERVICES d/b/a BAPTIST HEALTH FAMILY CLINIC - SOUTH, a Foreign Corporation; <br><br> (3) BAPTIST HEALTH d/b/a BAPTIST HEALTH MEDICAL CENTER – LITTLE ROCK, a Foreign Corporation; <br><br> (4) MARK J. FOWLER, M.D., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) 25-CV-123-JAR <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

This case arises from tragedy and returns to a question as old as the law itself: whether equity, grounded in Oklahoma's promise of open courts, may overcome the boundaries of another state's law, or whether this Court must hold firm to the rule as it is written.

A woman from Oklahoma sought care just across the state line in Arkansas. She trusted her doctors, fought her illness, and was lost too soon. Her family now turns to this Court, invoking Oklahoma's promise of access to justice, and asks

whether their inability to satisfy Arkansas's procedural requirements, one missed step in the process, should nonetheless foreclose their opportunity to be heard in their home-state forum.

The Defendants, all Arkansas medical providers, contend that the law leaves no room for discretion: a claim filed before legal authority to sue existed is no claim at all, and the limitations fixed by statute cannot yield to emotion or the borders between states.

The question before the Court is narrow but consequential. It rests at the point where equity yields to certainty, and where justice itself depends upon fidelity to law.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Before the Court is Defendants' Joint Motion to Dismiss or, in the Alternative, Transfer Venue (Dkt. No. 18), Plaintiff's Response in Opposition (Dkt. No. 33), and Defendants' Reply (Dkt. No. 39).

This case arises from the medical care provided to De'Ja Curtis at Baptist Health facilities in Fort Smith and Little Rock, Arkansas, between April and August 2021. (See Dkt. No. 18 at 2–3; Dkt. No. 2-17- Plaintiff's Petition.) Plaintiff alleges that Defendants failed to timely diagnose and treat cervical cancer, leading to Ms. Curtis' death in Oklahoma on February 13, 2023. (*Id.*; Dkt. No. 33 at 2.)

Plaintiff first filed suit on April 28, 2023, in the Circuit Court of Sebastian County, Arkansas, asserting the same claims presented here. (See Dkt. No. 2-2 – Arkansas Complaint). At that time, he had not yet been appointed personal

representative of the Estate. The record reflects that appointment occurred on June 1, 2023, more than a month after the initial filing. (See Dkt. No. 2-2, Ex. 17 at 2; Dkt. No. 33 at 2.) Facing discovery challenges to his capacity, Plaintiff voluntarily dismissed the Arkansas action without prejudice on October 17, 2023. (See Dkt. No. 18 at 3.)

Nearly one year later, on October 16, 2024, Plaintiff filed a new lawsuit in the District Court of Sequoyah County, Oklahoma, naming the same Arkansas Defendants and asserting identical allegations. (See Dkt. No. 18; Dkt. No. 2-17) Defendants timely removed the case to this Court on November 15, 2024, invoking diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. (See Dkt. No. 2, Notice of Removal)

On May 7, 2025, the parties filed executed consent forms, expressly indicating their consent to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). The Clerk entered a minute order confirming that "this case is deemed consented to the magistrate judge" and that the undersigned "will exercise complete jurisdiction through and including trial and entry of final judgment." (See Dkt. No. 26.)

A hearing on Defendants' motion to dismiss was held on August 25, 2025. Counsel for all parties appeared and presented oral argument. Defendants were represented by Mark D. Wankum, Timothy G. Best, and Benjamin D. Jackson; Plaintiff was represented by Donald E. Smolen II and Steven Lance Freije. Following

argument, the Court took the matter under advisement. (See Dkt. No. 43, Minutes of Hearing.)

## II.    GOVERNING LAW

### A.    Standard for a Motion to Dismiss

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotations omitted).

### B.    Substantive and Choice-of-Law Principles

When jurisdiction rests on diversity, a federal court applies the substantive law of the forum state, including its choice-of-law principles. Oklahoma follows the "most significant relationship" test from *Brickner v. Gooden*, 525 P.2d 632 (Okla. 1974), and the *Restatement (Second) of Conflict of Laws § 175*.

The Court considers:

(1) where the injury occurred;

4

(2) where the conduct causing the injury occurred;

(3) the domicile or place of business of the parties; and

(4) where the relationship between the parties was centered.

### III.   ANALYSIS

#### A.   Arkansas Law Governs

Every operative fact in this record points to Arkansas. The alleged acts of negligence occurred in Arkansas. The physicians and medical providers are Arkansas citizens, licensed and regulated under Arkansas law. The relationship between patient and provider was formed, governed, and completed there.

Although Ms. Curtis was an Oklahoma resident and her death occurred in Oklahoma, the *Restatement (Second) of Conflict of Laws* § 175 provides that "the place where the injury occurs is the place where the force set in motion by the actor first takes effect on the person," not necessarily where death occurs. The negligent acts alleged here took effect in Arkansas.

Plaintiff relies on *Brickner v. Gooden*, 525 P.2d 632 (Okla. 1974), to argue that Oklahoma's "open courts" policy should govern this action. The argument misreads both the decision and the factual record before this Court.

In *Brickner*, the Oklahoma Supreme Court adopted the "most significant relationship" test from the *Restatement (Second) of Conflict of Laws* § 175. *Id.* at 635. The case involved an airplane owned, hangared, and registered in Oklahoma; both

the pilot and passenger were Oklahoma residents; and the flight originated in and was to return to Oklahoma. The crash occurred in Mexico. *Id.* at 633–34. The court concluded Oklahoma law controlled because Oklahoma had the dominant relationship to both the parties and the occurrence, while Mexico's only contact was as the location of the accident. *Id.* at 636.

That holding does not support Plaintiff's position. Unlike *Brickner*, every operative act giving rise to the alleged negligence occurred in Arkansas. The Defendants are Arkansas medical providers, licensed and regulated under Arkansas law. The alleged misdiagnosis, treatment, and follow-up all took place in Fort Smith and Little Rock, not Oklahoma. The physician–patient relationship was formed, governed, and concluded in Arkansas. Only the consequences of that alleged negligence were later felt in Oklahoma.

Under *Brickner's* own factors, Arkansas (not Oklahoma) has the most significant relationship to the conduct at issue. The place of the conduct causing the injury, the place where the injury first took effect, and the center of the parties' relationship are all Arkansas. See *Id.* at 635–36. Oklahoma's interest arises solely from the decedent's residence and the family's domicile. The Restatement makes clear that such residence alone does not outweigh the state where the acts occurred and whose statutes govern the professionals involved. Accordingly, *Brickner* reinforces, rather than undermines, the application of Arkansas law here.

Oklahoma's Constitution provides that "courts of justice shall be open to every person." *Okla. Const. art. II*, § 6. That guarantee, however, does not displace another state's substantive law when the underlying events are governed by that foreign law under Oklahoma's own choice-of-law principles. *Brickner*, 525 P.2d at 635–36. Arkansas's legislature has prescribed the period within which a medical-injury claim must be brought, Ark. Code Ann. § 16-114-203, and Oklahoma's public policy cannot override that statute where Arkansas law properly governs the occurrence. Constitutional empathy cannot enlarge a limitation period set by a sister state's law.

The Court acknowledges Oklahoma's legitimate interest in remedies for its citizens. But Oklahoma's policy must yield where another state's connection to the conduct, relationship, and governing standards is dominant. Here, every link in the chain of treatment lies in Arkansas. Oklahoma's open-courts guarantee does not convert Oklahoma law into the governing substantive rule where *Brickner's* factors assign that role to Arkansas.

**B.    The Arkansas Statute of Limitations Bars the Claims**

The Arkansas Medical Malpractice Act governs actions "to recover damages on account of medical injury." *Ark. Code Ann.* § 16-114-201. It provides a strict two-year statute of limitations:

> "All actions for medical injury shall be commenced within two (2) years after the cause of action accrues."
> 
> —*Ark. Code Ann.* § 16-114-203(a)

7

A cause of action accrues "on the date of the wrongful act complained of and no other time." § 16-114-203(b).

According to the pleadings, the last alleged negligent act occurred on August 30, 2021 (see Dkt. No. 18 at 2–3; Dkt No. 33 at 2). Under Ark. Code Ann. § 16-114-203(a), the two-year statute of limitations therefore expired on August 30, 2023. The present Oklahoma complaint was filed on October 16, 2024 (see Dkt. No. 2-17), more than one year beyond that statutory deadline.

Mr. Abbey filed the first action before his appointment as personal representative, contrary to Ark. Code Ann. § 16-61-110. That omission was jurisdictional, not procedural. As discussed further below, *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239, holds that a complaint filed without authority "commences no action" and is void ab initio. Id. at 247. The rule is neither new nor uncertain: *Sanderson v. McCollum*, 82 Ark. App. 111, 112 S.W.3d 363 (2003), recognized it years earlier, and *Patil v. Hoover*, 2012 Ark. App. 341, later confirmed that a void filing cannot be revived by refiling.

C.     **The Savings Statute Does Not Apply**

Plaintiff argues that Arkansas's savings statute, *Ark. Code Ann.* § 16-56-126, preserved his claim because he filed in April 2023, voluntarily dismissed in October 2023, and refiled within one year. That argument fails because his first complaint was a nullity, not a properly commenced action.

The Arkansas Supreme Court's decision in *Travis Lumber Co. v. Deichman*, 319 S.W.3d 239, is dispositive. In *Travis Lumber*, a trustee and estate representative filed suit before obtaining the letters of administration required by *Ark. Code Ann.* § 16-61-110. The trial court dismissed all estate claims as nullities, and the Supreme Court affirmed, holding that both the original and amended complaints "failed to comply with the statutory requirements for the filing of ancillary administration ... making both complaints nullities." *Id.* The court reasoned that because the representative lacked authority when filing, the complaint "commenced no action," and the later issuance of letters could not cure the defect.

The parallel to this case is exact.

- Plaintiff filed the Arkansas complaint on April 28, 2023, but was not appointed personal representative until June 1, 2023.
- He then dismissed that action and refiled in Oklahoma after the two-year limitations period expired.

As in *Travis Lumber*, a filing made without legal authority to represent the estate is void *ab initio* and cannot toll the statute of limitations.

Plaintiff also relies on *Rettig v. Ballard*, 2009 Ark. 629, 362 S.W.3d 260, and *Forrest City Machine Works, Inc. v. Lyons*, 315 Ark. 173, 866 S.W.2d 372 (1993), urging a liberal construction of Arkansas's savings statute, *Ark. Code Ann.* § 16-56-126. Both decisions presuppose a validly commenced action later affected by a curable defect, such as a defective summons. In *Rettig*, the Arkansas Supreme Court applied

9

the savings statute where the original complaint had been timely and jurisdictionally sound but dismissed for defective service. 362 S.W.3d at 263–64. Likewise, *Lyons* involved a dismissal after proper commencement. 866 S.W.2d at 373. *Rettig* and *Lyons* therefore do not alter the outcome.

Plaintiff's venue cases, <u>McCaskey v. Continental Airlines, Inc.</u>, 133 F. Supp. 2d 514 (S.D. Tex. 2001); <u>Morgan v. North Mississippi Medical Center, Inc.</u>, 403 F. Supp. 2d 1115 (S.D. Ala. 2005); and <u>Etienne v. Wolverine Tube, Inc.</u>, 12 F. Supp. 2d 1173 (D. Kan. 1998), are likewise inapposite. They address where a valid claim may be brought, not whether one exists. None changes the conclusion that the first action was void and the second untimely.

A null action cannot trigger Arkansas's savings statute. It commences nothing and preserves nothing. The two-year limitations period therefore expired unaltered, and this lawsuit is time-barred.

### D.    Plaintiff's Minor-Children Argument

Plaintiff briefly references Ms. Curtis' minor children as a potential tolling ground. Nothing in the Arkansas Medical Malpractice Act provides tolling for minors when the action is brought through a personal representative. The statute of limitations in § 16-114-203 applies uniformly to all medical-injury claims and is not subject to extension under these facts.

### E.    The Limitations Issue Is a Legal Question

Plaintiff next asserts that the running of limitations is a question for the jury. See *Nw. Ark. Recovery, Inc. v. Davis*, 89 Ark. App. 62, 200 S.W.3d 481 (2004); *Horton v. Hamilton*, 2015 OK 6, ¶ 10, 345 P.3d 357. Those cases concern disputes over the facts giving rise to accrual. No such dispute exists here. The relevant dates: treatment in 2021, filing in April 2023 before appointment, appointment in June 2023, nonsuit in October 2023, and refiling in October 2024, are undisputed and appear on the face of the pleadings. Where the limitations bar is clear from the complaint, the issue is one of law properly decided under Fed. R. Civ. P. 12(b)(6). Plaintiff identifies no factual dispute bearing on accrual.

### F.    Derivative and Vicarious Liability

Plaintiff also suggests that the vicarious-liability claims against the Baptist entities survive because the claims against the individual provider were timely. However, once the underlying medical-negligence claim is barred, the derivative claim necessarily fails. See *Magrans v. Andrada*, 2021 Ark. App. 35, ¶¶ 8–10, 616 S.W.3d 668, 671. Plaintiff offers no independent theory to preserve vicarious liability beyond the statute that governs the medical-injury claim itself.

### G.    Amendment Would Be Futile

The timeline of events (treatment in 2021, filing in April 2023 without authority, dismissal that October, and refiling in October 2024) is undisputed in the pleadings. Because the statute-of-limitations bar appears on the face of the complaint

and its attachments, dismissal under Rule 12(b)(6) is proper. No further factual development could alter that outcome, and therefore amendments would be futile.

### H.    Alternative Request for Transfer

Because dismissal disposes of the action, Defendants' alternative motion to transfer under 28 U.S.C. § 1404(a) is Denied as Moot.

### CONCLUSION

Every path in this case leads to Arkansas: the doctors, the clinics, the treatment, and the law. Under that law, an action filed before a representative has authority to sue is void, and an expired limitation period cannot be revived by it. The Court recognizes the loss reflected in this record. Ms. Curtis' death was a tragedy, and the Court does not take lightly the family's pain. However, fidelity to the rule of law demands adherence to the statutory framework governing medical-negligence claims. The first action in Arkansas never came into being. The second suit in Oklahoma was filed too late. The law cannot restore what was never lawfully begun.

Accordingly, Defendants' Joint Motion to Dismiss (Dkt. No. 18) is GRANTED.

**IT IS THEREFORE ORDERED** Defendants' Joint Motion to Dismiss (Dkt. No. 18) is GRANTED, and this matter is hereby Dismissed With Prejudice. Defendants' Alternative Motion to Transfer Venue is Denied as MOOT.

Dated this 28th day of October 2025.

---
Jason A. Robertson
United States Magistrate Judge